# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEONCIO ELIZARRI, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 17 C 8120 ) ) |
| SHERIFF OF COOK COUNTY AND COOK COUNTY, ILLINOIS, | ) Judge Thomas M. Durkin ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Leoncio Elizarri, individually and on behalf of others similarly situated, sued defendants Sheriff of Cook County and Cook County, Illinois based on Cook County Jail's practice of holding the personal property of thousands of former prisoners. Currently before the Court is the Sheriff's motion to dismiss Elizarri's claims under Fed. R. Civ. P. 12(b)(6). R. 13. For the following reasons, the Court denies the Sheriff's motion.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *E.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

The Sheriff lawfully seizes prisoner property from prisoners when they enter Cook County Jail. R. 1 ¶ 6. When a prisoner is transferred away from Cook County Jail, Illinois law requires the Sheriff to send to the receiving facility "compliant property," which consists of: (a) monies in the prisoner's commissary account; (b) identification cards; (c) legal papers; (d) one religious book; (e) eyeglasses or contacts and case; (f) personal correspondence; (g) wedding bands without stones; and (h) photos (up to 24). *Id.* ¶ 8. Prisoner property that the receiving facility will not accept is known as "non-compliant property." *Id.* ¶ 9. Before 2008, the Sheriff had a procedure of destroying all non-compliant property of prisoners transferred to other

2

facilities unless the prisoner arranged for someone to pick up the property within 45 days. *Id.* ¶¶ 11-12.

In 2007, Elizarri filed a predecessor suit to this one arising from his detention at Cook County Jail from October 26, 2005 to November 30, 2006. *Elizarri v. Sheriff*, 07-cv-2427 (N.D. Ill.) (Gottschall, J.), *appeal pending*, 7th Cir., No. 17-1522 ("*Elizarri I*"). The claims in *Elizarri I* included alleged violations of the Fourth and Fourteenth Amendments when Elizarri's property was seized and not returned after his release from Cook County Jail. *See, e.g.*, *Elizarri I*, 07-cv-2427, Dkt. 1.

Beginning in 2008, "while awaiting instructions from [the *Elizarri I* court]," the Sheriff changed its policy regarding non-compliant property. R. 1 ¶ 13. Instead of destroying non-compliant property unless a prisoner made other arrangements for it following a transfer, the Sheriff began storing non-compliant property following transfers. *Id.* ¶¶ 11-13.

In early 2011, while *Elizarri I* was ongoing, the Sheriff hired an outside vendor to inventory the collected non-compliant property. *Id.* ¶ 14. The vendor inventoried 57,641 sealed bags of property from detainees transferred from Cook County Jail to the Illinois Department of Corrections alone. *Id.* ¶ 15. Included within the inventory the vendor produced are 23,415 property bags containing at least some compliant property, and 386 bags containing valuable jewelry (including a diamond ring worth more than $25,000). *Id.* ¶¶ 16-17. The Sheriff has not yet returned this property. *Id.* ¶ 18.

In early 2016, *Elizarri I* proceeded to trial based on the following certified class:

> All persons who, on or after June 6, 2005, made a timely request for the return of property taken from them upon admission to the Jail and were informed that the property had been lost or stolen. A request by a person who was released before July 27, 2007 was timely if it was made within 120 days of his/her release. A request by a person who was released on or after July 27, 2007 was timely if it was made within 90 days of his/her release.

*Elizarri I*, 07-cv-2427, Dkt. 101 at 2. At the pre-trial conference on January 29, 2016, the court ordered that "[t]he class period for this trial shall be from June 6, 2005 to June 30, 2013, which was the close of fact discovery in this case." *Id.*, Dkt. 407. On February 4, 2016, the jury returned a verdict for defendants on the class's damages claim. *Id.*, Dkt. 445. An appeal of the jury verdict followed, and the Seventh Circuit heard argument in the case on April 6, 2018.

On February 15, 2017, the district court in *Elizarri I* denied a petition to file a complaint in intervention, which sought to raise the claims of former detainees who left the jail after the conclusion of the class period on June 30, 2013 and also sought injunctive relief. *Id.*, Dkt. 478. The court declined "to reopen a case that is, and should remain, concluded," citing the "massive delay and massive prejudice" that intervention would create, as well as the proposed intervenors' failure to brief relevant intervention issues. *Id.* at 5-6. The court suggested that the intervenors may have a remedy in state court. *Id.* at 6.

On November 9, 2017, Elizarri filed the current lawsuit. R. 1. Elizarri's allegations in this case arise from events that post-date the class period of *Elizarri*

4

*I*—namely, the Sheriff's retention of Elizarri's personal items taken when his probation was revoked on December 30, 2015. *Id.* ¶¶ 20-22. These items included $22.50 in U.S. currency, a driver's license, a social security card, a pre-paid VISA card with a $200 balance, a CTA bus card, a cell phone, and various pieces of jewelry. *Id.* ¶ 22. These items were inventoried and placed in a sealed property bag by employees of the Sheriff's office. *Id.* ¶¶ 23-24. On May 12, 2016, Elizarri was transferred to the custody of the Illinois Department of Corrections, and on December 9, 2016, he was discharged on mandatory supervised release. *Id.* ¶ 25. The Sheriff did not transfer and continues to hold Elizarri's property. *Id.* ¶ 26.

Elizarri seeks class-wide relief on behalf of "all persons transferred to the Illinois Department of Corrections from the Cook County Jail whose property remains in the custody of the Sheriff of Cook County." *Id.* ¶ 29. Elizarri raises claims under the Fourth and Fourteenth Amendments and seeks "injunctive relief requiring the Sheriff to return all property belonging to former detainees," along with "appropriate restitution for property that has been lost, misplaced, or stolen." *Id.* at 7. The Sheriff subsequently moved to dismiss Elizarri's complaint. R. 13.

## Discussion

The Sheriff's motion to dismiss concedes that he is holding Elizari's personal property: "[T]he Sheriff is holding [Elizarri's] property pending the decision in case no. 07 cv 2427." R. 13 at 4. The Sheriff acknowledges that he is holding other former inmates' personal property as well, and "waiting for the final determination as to the inmates' possessory interests" by the Seventh Circuit in *Elizarri I*. *Id.*

5

The Sheriff nevertheless argues that "[i]t is premature for the Plaintiff to bring the present § 1983 action pending the appeal in Case No. 07-cv-2427." R. 22 at 4. The Sheriff maintains that "the particular procedure complained of by Plaintiff is allegedly adopted due to Plaintiff's previous lawsuit, case no. 07 cv 2427." R. 13 at 4. The Sheriff says that the cases overlap and that a final decision by the Seventh Circuit in *Elizarri I* will "impact Plaintiff and his proposed class in this matter and their possessory rights in the property." *Id.* at 5.

As Elizarri points out, however, this case is distinct from *Elizarri I* in a number of ways. First, the class period in *Elizarri I* ended on June 30, 2013, and Elizarri's claim in this case arose no earlier than December 30, 2015 when his property was confiscated following the revocation of his probation. Second, *Elizarri I* involved a practice dating back to at least 2005 regarding property detainees inquired about and were "informed" had been "lost or stolen," Dkt. 101 at 2, whereas this case involves a practice adopted in 2008 as a result of *Elizarri I* of holding former detainees' property pending the final outcome of that case. Third, *Elizarri I* involved a claim for damages, whereas this case involves claims for injunctive relief and restitution.

The Sheriff disingenuously says that "[b]y [Elizarri's] own admission, the procedure taken by the Sheriff is due and justified in light of case no. 07 cv 2427." R. 13 at 4. But Elizarri nowhere concedes that the procedure undertaken by the Sheriff following *Elizarri I* is "justified." Whether it is justified is the subject of this lawsuit. Nor does the Sheriff point to any order in *Elizarri I* requiring the Sheriff to refuse to

6

return Elizarri's property while *Elizarri I* is pending. To the contrary, the *Elizarri I* court explicitly instructed the jury that "[t]he Court has not entered any orders instructing the Office of the Sheriff of Cook County to take actions or not take actions related to property at the Jail." *Elizarri I*, 07-cv-2427, Dkt. 443 at 22. The Sheriff also does not point to any specific issue in the appeal of *Elizarri I* that would be dispositive of the claims in this case.

To be sure, any eventual class definition will need to be tailored to avoid overlap with *Elizarri I*. And the Seventh Circuit's decision in *Elizarri I* may affect this case. But that does not justify outright dismissal of Elizarri's complaint based on prematurity.

The Sheriff also maintains that Elizarri's Fourth Amendment claim should be dismissed because no search or seizure occurred. Elizarri acknowledges that his Fourth Amendment claim is currently precluded by binding Seventh Circuit precedent in *Lee v. City of Chicago*, 330 F.3d 456, 461 (7th Cir. 2003). But Elizarri has "included the Fourth Amendment theory in this case to preserve the claim" in case the Seventh Circuit reconsiders its holding in *Lee* in light of *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017). R. 16 at 4-5. Elizarri urged the Seventh Circuit to reconsider its holding in *Lee* in the currently pending appeal in *Elizarri I*. In light of the fact that this appeal is still pending and this argument for dismissal is underdeveloped, the Court declines to dismiss Elizarri's Fourth Amendment claim at this time.

7

**Conclusion**

For these reasons, the Court denies the Sheriff's motion to dismiss (R. 13).

ENTERED:

*[signature: Thomas M. Durkin]*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 4, 2018