IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Leoncio Elizarri, by Leticia Perez as special administrator, Gregory L. Jordan, and Ted Velleff, | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | No. 17-cv-8120 |
| -vs- | ) ) | *(Judge Seeger)* |
| Sheriff of Cook County and Cook County, Illinois, | ) ) ) ) | |
| *Defendants*. | ) | |

## PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING MOTION FOR CLASS CERTIFICATION

Pursuant to *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 837 (7th Cir. 1999), plaintiffs respectfully request that the Court reconsider its order of March 14, 2022, denying plaintiffs' motion for class certification.

Grounds for this motion are as follows:

1. Plaintiffs seek to maintain this case as a class action for

   All persons who left the Cook County Jail to serve a sentence in the Illinois Department of Corrections on and after November 9, 2015 and whose government-issued identification remained in the custody of the Sheriff of Cook County.

2. Defendants, in their response to the motion for class certification, did not contest that the number of persons in the proposed class satisfies the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil

Procedure. Defendants' argument on numerosity consists of two paragraphs (ECF No. 153 at 10), limited to the numerosity of the proposed "clothing subclass." Plaintiffs withdrew their request for certification of a "clothing subclass" following the decision of the Seventh Circuit in *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2022), *pet. for cert. filed* Dec. 17, 2012, No. 21-898. (ECF No. 155 at 1.) Thus, plaintiffs limited their request for class certification to the "government-issued identification" issue, and defendants did not contest that this class satisfies the numerosity requirement of Rule 23(a)(1).

3. Defendants did not contest, as the Court correctly observed, that "it's fair to assume that lots of people get arrested with ID cards, wind up at the Cook County Jail, and then get shipped to the IDOC." (ECF No. 169, Mem.Op., March 14, 2022, at 21.)

4. Despite this observation, the Court ruled that plaintiffs had not demonstrated numerosity because plaintiffs did not present evidence on what the Court called, "the second important part of the question: the number of people who left the Cook County Jail without their ID cards." (ECF No. 169, Mem.Op., March 14, 2022, at 21.)

5. But defendants did not contest that lots of people leave the Cook County Jail to serve time in the IDOC without their ID cards: defendants

know that the Sheriff does not send *any* ID cards to IDOC, either with the prisoner or at some later time.

6. Had defendants contested the numerosity of the "government-issued identification" subclass or had plaintiffs received notice that the Court was conducting its own investigation into numerosity, plaintiffs would have submitted the evidence described below.

7. The Sheriff provides prisoners being shipped to the IDOC with a "Shipment Donation/Designation Form," attached as Exhibit 1. This form makes plain that the Sheriff does not send any of the personal property that arrived at the Jail to the Illinois Department of Corrections:

> When you were admitted to the Department of Corrections, you may have had clothing items and/or personal property that was inventoried during admission and held during your detention. Belongings known as compliant property were placed in a sealed bag by the arresting agency.
>
> *You are being shipped to the Illinois Department of Corrections or to another facility and cannot take any of the items above with you.* You have two choices. You can donate the items or designate someone to pick them up. Below are two sections, Donation Authorization and Authorization for Property Pickup. DO NOT FILL OUT BOTH SECTIONS.

(Shipment Donation/Designation Form, Exhibit 1, emphasis supplied.)

8. The Jail explained this policy in its answer to "Plaintiffs' Fourth Set of Special Interrogatories," attached as Exhibit 2:

> Subject to and without waiving said objections, Defendant Sheriff Dart submits that the CCSO Policy 109 deems government-issued ID cards to [be] "compliant property." *See* CCDOC

> Policy 109.2.1, "Definitions" of "Compliant Property," subsection (d). As a part of a detainee's "compliant property," pursuant to subsections 109.3 and 109.4.2, CCSO policy is to inventory and store detainee compliant property, and such property may be:
>
> - Released to designee during subject's stay, or
> - Claimed by subject upon release; or
> - If unclaimed for 45 days after release/shipment, sent to CCSO's Warehouse for disposition.
>
> Subsection 109.7.4 governs detainee personal property for detainees transferred to the Illinois Department of Corrections, including compliant property, not picked by the detainee or a designee. Pursuant to Rule 33(d)(1), Defendant Sheriff Dart directs Plaintiff to Policy 109.

(Sheriff's Answer to Plaintiff's Fourth Set of Special Interrogatories, Exhibit 2 at 1-2.)

9. "Policy 109" referred to in the Sheriff's answer to Plaintiff's Fourth Set of Special Interrogatories is attached as Exhibit 3 and states as follows in subsection 109.7.4:

> **109.7.4 SUBJECT TRANSFERRED TO THE ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC) OR OTHER AGENCY**
>
> The Department of Corrections Central Property Room sworn members shall handle property shipments as follows:
>
> > (a) Review the Shipment Designator Form for each day's scheduled IDOC shipments.
> >
> > (b) Remove each subject's blue canvas property bag from the property conveyor.
> >
> > (c) Separate the bags into designated property and donated property.

(d) **Designated property**–Inventory and store the designated property for 45 days.

> 1. If the designated party fails to collect the property after 45 days, the property will be prepared for delivery to the Cook County Warehouse for disposal or destruction. A copy of the Shipment Designator Form for each property bag will be included.

(e) **Donated property**–Separate all donated property. See the subsection of this procedure entitled Destruction or Donation of Property for handling donations.

10. The "prisoner's handbook" provided to detainees by the Sheriff also states that personal property is not transferred to IDOC but is held for 45 days and then "disposed of." The handbook in force from February of 2017 to July of 2017 states as follows:

> Upon transfer to another facility, property will be kept in the Clothing Room for 45 days after you leave the CCDOC, after which time it will be disposed of in accordance with CCDOC policy.

Prisoner Handbook, February 2017, Exhibit 4 at 33. The Sheriff restated this policy in the July, 2017 edition of the handbook:

> **What happens to my property while I am in the CCDOC?**
>
> The following items, referred to as compliant property, are stored by CCDOC:
> - United States Currency
> - Clothing
> - Credit cards
> - Transit cards
> - Government issued identification cards
> - One plain wedding band
> - Personal keys

- Belt
- Shoelaces
- Prescription eyeglasses
- Prescription medication (name on prescription label must match subject's identification)
- Soft cover religious texts (e.g., Bible, Koran)
- Legal documents with soft cover only

Your personal compliant property (items listed above that you were in possession of) will be kept in the CCDOC Clothing Room, located at 2700 S. California. If you are being discharged, you will be escorted to the Clothing Room and your property will be returned. Upon transfer to another facility, you will be provided an opportunity to designate someone to come to CCDOC and claim your property. Property will be kept for 45 days after you leave CCDOC. After this time, if your designated recipient has not claimed your property, it will be disposed of in accordance with CCDOC policy.

Prisoner Handbook, February 2017, Exhibit 5 at 41. The Sheriff repeated this information in the June 2018 edition of the Handbook, Exhibit 6 at 39.

11. The Court may have departed from the principle of party presentation, *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), in its analysis of numerosity. The parties knew that the number of persons in the "government-identification subclass" satisfied the numerosity requirement of Rule 23(a)(1) and did not frame this issue for decision. None of the parties deemed it appropriate to present evidence on what is an undisputed fact.

12. The Court also overlooked the agreement of the parties that plaintiff Velleff left the Jail for the IDOC on August 1, 2017, within the proposed class period. (ECF 153, Sheriff's Memorandum in Opposition to Class

-6-

Certification at 3.) The Court stated that Velleff does "not fall within the class definition because [he] entered the IDOC before the class period." (ECF No. 169 at 28.) It is true that Velleff entered IDOC in 2014, but he again entered IDOC in 2017, within the class period. (ECF No. 153-1 at 14-15, Velleff Dep. 52:23-52:4, 56:13-58:7.)

13. The parties also agreed that when Velleff was transferred from the Jail to IDOC in 2017, the Sheriff did not send to IDOC the property taken from Velleff on his entry to the Jail but held onto that property until it became "eligible for destruction" on January 25, 2018. (Memorandum, Ornelas to Office of Support Services, January 25, 2018, attached as Exhibit 7.) The ID Card the Sheriff returned to Velleff in 2021 "corresponds to Mr. Velleff's incarceration at the Illinois Department of Corrections (IDOC) after a transfer from the Cook County Jail on January 24, 2014." (ECF No. 148 at 4, Letter, Dombrowski to Flaxman, June 18, 2021).

The Court should therefore reconsider its order denying plaintiffs' motion for class certification.

       Respectfully submitted,
/s/ <u>Kenneth N. Flaxman</u>
       Kenneth N. Flaxman
       ARDC No. 08830399
       Joel A. Flaxman
       200 S Michigan Ave, Ste 201
       Chicago, IL 60604
       (312) 427-3200
       *Attorneys for Plaintiffs*