## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEONCIO ELIZARRI, by his Special Administrator LETICIA PEREZ, GREGORY L. JORDAN, and TED VELLEFF, individually and on behalf of all other similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-8120 |
| v. | ) ) | Hon. Steven C. Seeger |
| SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, | ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Court denied the motion for class certification because Plaintiffs offered insufficient evidence of numerosity, and thus failed to carry their burden under Rule 23. Plaintiffs, in turn, filed a motion for reconsideration. The gist of the motion is that Defendants never opposed the motion for class certification on numerosity grounds.

That argument is more than a little difficult to square with Defendants' brief opposing class certification. The brief squarely argued that "[n]umerosity under Rule 23(a)(1) is not satisfied." *See* Defs.' Resp. to Pls.' Mtn. for Class Certification, at 10 (Dckt. No. 153). The heading didn't leave a lot of room for ambiguity, either: "**PLAINTIFFS FAIL TO ESTABLISH NUMEROSITY UNDER RULE 23(a)(1).**" *Id.* (emphasis and all caps in original).

Plaintiffs made little effort to establish numerosity when they filed for class certification. And now, after the Court has ruled, Plaintiffs attempt to fill the gap by presenting evidence that

they failed to submit when they had the opportunity. But a motion for reconsideration is not an opportunity to present evidence that a party should have submitted the first time.

For the reasons stated below, the motion for reconsideration is denied.

## Background

This case is about the handling of detainees' property, including government IDs, at the Cook County Jail. The Court assumes that any interested reader will have intimate familiarity with the long and winding procedural history. So the Court will give only the highlights.

In 2017, Leoncio Elizarri filed a putative class action against the Sheriff of Cook County and the County itself for their handling of property – including detainees' government ID cards – at the Jail. *See* Cplt. (Dckt. No. 1). An amended complaint added Gregory Jordan as a named plaintiff. *See* First Am. Cplt. (Dckt. No. 42). Both Elizarri and Jordan entered the Cook County Jail with government IDs, among other personal property, and claimed that they never got their property back. *See* Cplt., at ¶ 22 (Dckt. No. 1); First Am. Cplt., at ¶ 30 (Dckt. No. 42).

Two years later, the case was reassigned from Judge Durkin to this Court. At the initial status hearing after reassignment, defense counsel revealed that Defendants had located the property of the two named plaintiffs (Elizarri and Jordan), and wanted to return it. *See* 11/8/19 Tr., at 17–23 (Dckt. No. 89). So the Court facilitated the property exchange, and by October 2020, "Defendants . . . returned all the property belonging to the named plaintiffs." *See* 10/28/20 Status Report (Dckt. No. 127).

The return of the property called into question whether Elizarri and Jordan could serve as adequate class representatives, especially for injunctive relief. *See* 11/16/20 Order (Dckt. No. 129). Soon after, Plaintiffs requested and received leave to amend the complaint yet again, adding Ted Velleff as a class representative. *See* Mtn. to Amend Cplt. (Dckt. No. 132); 4/19/21

Order (Dckt. No. 136); Second Am. Cplt. (Dckt. No. 140). Plaintiffs expressly did so because of the concern about the adequacy of representation after the return of the property. *See* Mtn. to Amend Cplt., at 2 ("The proposed amended complaint therefore adds Ted Velleff, a former detainee at the Jail, as a plaintiff to ensure that the putative class will be adequately represented.").

The Second Amended Complaint includes three claims. One of the claims is about detainees' clothing. Plaintiffs claim that Defendants took detainees' clothing and gave it away in violation of the Takings Clause of the Fifth Amendment. *See* Second Am. Cplt., at ¶¶ 17–22 (Dckt. No. 140).

The other two claims are about detainees' government identification cards. Plaintiffs claim that Defendants took, stored, and destroyed property – including identification cards – in violation of the Fourteenth Amendment. *Id.* at ¶¶ 23–39. And they claim that Defendants failed to give notice to the detainees that their property was available for pickup, in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at ¶¶ 40–43.

Plaintiffs later moved for class certification. *See* Pls.' Mtn. for Class Certification (Dckt. No. 146). Plaintiffs originally sought to certify four subclasses. Plaintiffs sought certification of a "clothing" subclass, called the "Fifth Amendment Takings Subclass." *Id.* at 1.

Plaintiffs also requested certification of three "Fourteenth Amendment Damages Subclasses." *Id.* The first Fourteenth Amendment subclass was a "government identification" subclass. *Id.* Another Fourteenth Amendment subclass involved property that was sold, destroyed, or lost after November 9, 2015. *Id.* The final Fourteenth Amendment subclass involved property that remains in the custody of the Sheriff. *Id.*

Plaintiffs then backtracked and narrowed their request for class certification. In their supporting memorandum, Plaintiffs requested certification of two subclasses, not four. The first subclass included "[p]ersons whose clothing was taken by the Sheriff to be used by detainees upon release from the Cook County Jail (Fifth Amendment Takings Subclass)." *See* Pls.' Mem., at 1–2 (Dckt. No. 150). The second subclass included "[p]ersons whose government issued identification remained in the custody of the Sheriff of Cook County (Fifth and Fourteenth Amendment Damages Subclass)." *Id.*

In their reply brief, Plaintiffs continued to whittle. Plaintiffs acknowledged that the Seventh Circuit's decision in *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021), undercut the request for certification of a "clothing" subclass. *See* Pls.' Reply, at 1 (Dckt. No. 155). So Plaintiffs "withdr[e]w their request for certification of the 'clothing' subclass." *Id.*

Plaintiffs requested certification of a "government identification" subclass, only. *Id.* Specifically, Plaintiffs asked the Court to certify a class of "[a]ll persons who left the Cook County Jail to serve a sentence in the Illinois Department of Corrections on and after November 9, 2015 and whose government issued identification remained in the custody of the Sheriff of Cook County." *Id.* at 8; *see also* Pls.' Mtn. for Class Certification, at 1 (Dckt. No. 146).

Defendants opposed the motion for class certification on a number of grounds, including numerosity. *See* Defs.' Resp. to Pls.' Mtn. for Class Certification, at 7 (Dckt. No. 153) ("It is clear the Plaintiffs cannot satisfy the numerosity, typicality and commonality provisions of Rule 23."); *see also id.* at 10. For some reason, Plaintiffs declared victory in their reply when it came to numerosity. Plaintiffs represented that "Defendants do not challenge numerosity," even though Defendants had, in fact, argued against numerosity. *See* Pls.' Reply, at 5 (Dckt. No. 155).

4

Meanwhile, Defendants located property belonging to Velleff (from his detention in 2013) and returned those items on June 16, 2021. *See* 7/14/21 Status Report (Dckt. No. 148); 7/27/21 Order (Dckt. No. 151). Velleff questioned whether the Jail has more property from his detentions in 2009, 2010, or 2016. *See* 8/6/21 Status Report (Dckt. No. 152).

But Defendants could not locate any such property. *Id.* at 2. And Velleff isn't sure if any such property exists. Velleff does not know if Defendants have returned all of his property. *Id.* ("[Velleff is] unable to form at the present time a belief, consistent with Rule 11 . . . about whether the Sheriff continues to possess the property listed in the preceding paragraph."). So no one knows if Defendants continue to possess any property belonging to Velleff.

This Court ultimately denied Plaintiffs' motion for class certification. *See* 3/14/22 Mem. Opin. & Order (Dckt. No. 169). The Court concluded that Plaintiffs had failed to satisfy the numerosity requirement of Rule 23. *Id.* The record was thin, if not barren. "There is almost nothing in the record about how many detainees entered the Jail with IDs, but later exited the Jail and entered the IDOC without them during the class period." *Id.* at 2. Plaintiffs offered 42 declarations, but 40 of the 42 declarants were not members of the putative class. *Id.*; *see also id.* at 23–25.

The Court also expressed doubt about whether Plaintiffs could satisfy the other requirements for class certification, including adequacy of representation. But the Court did not reach those issues given that Plaintiffs fell short on numerosity. *Id.* at 27.

Plaintiffs moved for reconsideration. *See* Pls.' Mtn. for Reconsideration (Dckt. No. 172). According to Plaintiffs, Defendants "did not contest that the number of persons in the proposed class satisfies the numerosity requirement." *Id.* at 1; *see also id.* at 2 ("[D]efendants did not contest that this class satisfies the numerosity requirement of Rule 23(a)(1).").

5

Plaintiffs then attempted to fill the gaps and mend the hold. Basically, Plaintiffs announced that they "*would have* submitted the evidence described below" if they had known that numerosity was at issue. *Id.* at 3 (emphasis added). Plaintiffs attempted to backfill the record, offering (1) a "Shipment Donation/Designation Form;" (2) Plaintiffs' interrogatory answers; and (3) a "prisoner's handbook" to support their position. *Id.* at 3–4.

## Legal Standard

A district court can revisit its orders before the entry of final judgment. Interlocutory orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). But a district court needs a reason – a *good* reason – to do so.

"A motion to reconsider an interlocutory order, however, serves a limited purpose, and it is not a vehicle to merely rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." *See Brodsky v. HumanaDental Ins. Co.*, 2016 WL 9212001, at *1 (N.D. Ill. 2016); *see also Wilkins v. Just Energy Grp. Inc.*, 2019 WL 1317756, at *2 (N.D. Ill. 2019); *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). "A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion." *Belbis v. County of Cook*, 2003 WL 187407, at *1 (N.D. Ill. 2003); *see also Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

Legitimate grounds for a motion for reconsideration include a "significant change in the law or facts since the parties presented the issue to the court." *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Other permissible grounds include the court's misunderstanding

of "a party's arguments, or a party's contention that the court ruled on an issue that was not properly before it." *Id.*; *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015) (explaining that motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence"). The Seventh Circuit has cautioned that the need for reconsideration "rarely arise[s] and the motion to reconsider should be equally rare." *See Bank of Waunakee*, 906 F.2d at 1191.

A district court's opinions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Geraty v. Village of Antioch*, 2015 WL 127917, at *3 (N.D. Ill. 2015) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). A party seeking reconsideration "bears a heavy burden." *See Patrick*, 103 F. Supp. 3d at 912. Ultimately, the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *See Darvosh v. Lewis*, 2015 WL 5445411, at *3 (N.D. Ill. 2015) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

District courts do not have the bandwidth to hear, and then rehear, motions again and again. The resources of a district court are finite, and there is a very real cost of looking at the same issue a second time. A court's time is zero sum, so any time spent on a motion for reconsideration is time that cannot be spent anywhere else. The cost of taking another look at the same issue is paid by every litigant in all of the other cases on a district court's docket. They have to wait while someone else gets back in line a second time.

It is hard to say how many legitimate reasons there are for moving for reconsideration. But phoning it in, on the first go-around, isn't one of them. The judicial system relies on parties

to put their best foot forward, and take advantage of the opportunity to make their best arguments when the time comes. A motion for reconsideration is not an appropriate vehicle for making arguments and presenting evidence that a party could have and should have offered the first time around.

Sometimes, taking another look at an issue makes perfect sense. District courts are in the business of getting things right. But courts are not in the business of reconsidering their decisions unless a litigant comes forward with a good reason. And here, there is none.

## Analysis

Plaintiffs move for reconsideration on two grounds. First, they argue that Defendants did not challenge numerosity, so the Court "may have departed from the principle of party presentation in its analysis of numerosity." *See* Pls.' Mtn. for Reconsideration, at 6 (Dckt. No. 172) (citing *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)). Second, they argue that if they had known that Defendants contested numerosity, they would have supported their motion for class certification with more evidence. *Id.* at 3–7.

Before diving in, it is important to keep first principles in mind. Plaintiffs "bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *see also Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F. 4th 839, 843 (7th Cir. 2022); *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021); *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1004 (7th Cir. 2019); *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017); *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). "Failure to meet *any* of the Rule's

requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (emphasis added).

That burden includes numerosity. "As with all of the requirements of Rule 23, the burden of proving that the class is so numerous that joinder is impracticable lies with the party seeking class certification. To meet that burden, the class proponent generally must proffer evidence of the number of members in the purported class, or at least a reasonable estimate of that number. The party seeking certification may not rely on conclusory allegations that joiner would be impracticable, or on mere speculation regarding the size of the class." *See* 5 James Wm. Moore, Moore's Federal Practice § 23.22(3) (3d ed. 2021) (citations omitted).

"The decision to certify a class or not can cause a considerable tilt in the playing fields of litigation and therefore is not one to take lightly." *Chicago Teachers Union, Local No. 1*, 797 F.3d at 433. So, to grant a motion for class certification, a court must be "'satisfied, after a rigorous analysis, that the prerequisites'" of Rule 23 are met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Rule 23 is more than 'a mere pleading standard.'" *Howard*, 989 F.3d at 597 (quoting *Wal-Mart*, 564 U.S. at 350).

A district court needs more than a plaintiff's say-so to certify a class. When "evaluating the Rule 23 factors, a court does not take the plaintiffs' allegations at face value." *Id.*; *see also Messner*, 669 F.3d at 811 ("[A] court may not simply assume the truth of the matters as asserted by the plaintiff.").

Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *See Wal-Mart*, 564 U.S. at 350.

Courts "must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). "The party supporting the class *cannot* rely on mere speculation or conclusory allegations as to the size of the putative class . . . for numerosity purposes." *Arreola*, 546 F.3d at 797 (quotation marks omitted) (emphasis added).

"A district court must 'rigorously analyze' the requirements of Rule 23." *See Howard*, 989 F.3d at 598 (citation omitted). Parties can agree that some requirements of Rule 23 are met. *See, e.g.*, *Ploss as Tr. For Harry Ploss Tr. 8/16/1993 v. Kraft Foods Grp., Inc.*, 341 F. Supp. 3d 1003, 1011 n.4 (N.D. Ill. 2020); *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 153 (N.D. Ill. 2020). But a district court is not bound by such an agreement if there is reason to reject it. Assuming away the requirements of Rule 23 is decidedly un-rigorous. At the end of the day, a district court must satisfy itself that a proposed class satisfies the requirements of Rule 23.

Here, Plaintiffs did not come close to satisfying the requirements for numerosity for the proposed "government identification" subclass. Plaintiffs made next to no showing about how many people entered the Cook County Jail with ID cards, and then exited the Jail without them.

Plaintiffs offered 42 declarations, and 39 of the 42 detainees entered the Cook County Jail with government ID cards, and then exited the Jail and entered the IDOC without them. *See* 3/14/22 Mem. Opin. & Order, at 22–23 (Dckt. No. 169). But 40 of the 42 declarants did not fall within the class period. *Id.* at 23–24.

It is unclear why Plaintiffs submitted so many declarations, but then submitted so few that fell within the proposed class. Maybe Plaintiffs merely recycled old declarations from the earlier *Elizarri* case. *See Elizarri v. Sheriff of Cook Cnty.*, 901 F.3d 787 (7th Cir. 2018)

(affirming a jury verdict in defendants' favor). Whatever the reason, the punchline was simple. Plaintiffs had the burden to lay the evidentiary foundation for class certification and establish numerosity. It wasn't a heavy lift, but they didn't carry it.

Plaintiffs have not come forward with any legitimate basis to reconsider that decision. The first argument is that Defendants never disputed numerosity. According to Plaintiffs, "Defendants, in their response to the motion for class certification, did not contest that the number of persons in the proposed class satisfies the numerosity requirement." *See* Pls.' Mtn. for Reconsideration, at 1 (Dckt. No. 172). As they tell it, the Court conducted "its own investigation into numerosity." *Id.* at 3.

That argument lands like a lead balloon. Even a quick read of Defendants' class certification response brief shows that Defendants did, in fact, oppose certification for lack of numerosity.

In fact, Defendants' brief devoted an entire header to the topic. It's hard to miss: "**PLAINTIFFS FAIL TO ESTABLISH NUMEROSITY UNDER RULE 23(A)(1).**" *See* Defs.' Resp. to Pls.' Mtn. for Class Certification, at 10 (Dckt. No. 153) (emphasis and all caps in original). The very next sentence reinforced the point: "Numerosity under Rule 23(a)(1) is not satisfied." *Id.*

Defendants did not concede numerosity at all. Instead, they did the opposite. "The numerosity requirement to proceed with a class action is *extremely challenging* for the Plaintiffs here." *Id.* (emphasis added). The brief then turned to the declarations, and explained why the putative class did not satisfy the numerosity requirement. *Id.*; *see also id.* at 7 ("It is clear here the Plaintiffs cannot satisfy the *numerosity*, typicality and commonality provisions of Rule 23.") (emphasis added).

After arguing that Defendants did not dispute numerosity, Plaintiffs beat a hasty retreat to a fallback position. Plaintiffs contend that "Defendants' arguments on numerosity" – which, one sentence earlier, Plaintiffs said didn't exist – was limited to the proposed "clothing subclass." *See* Pls.' Mtn. for Reconsideration, at 2 (Dckt. No. 172). And since Plaintiffs withdrew their request for certification of the clothing subclass, then any argument from Defendants about numerosity necessarily fell by the wayside, too. *Id.*

The fallback position is indefensible. Defendants did not limit their argument to the clothing subclass. Instead, Defendants argued that Plaintiffs had not demonstrated numerosity, period. *See* Defs.' Resp. to Pls.' Mtn. for Class Certification, at 10 (Dckt. No. 153). Defendants didn't even mention the clothing subclass in their section about numerosity.

Truth be told, Plaintiffs seem to be making things up as they go along. Plaintiffs moved for reconsideration based on the notion that Defendants never made an argument about numerosity. But they did. Then, Plaintiffs moved for reconsideration based on the notion that Defendants only opposed numerosity for the clothing subclass. But they didn't.

Next, Plaintiffs try to use the motion for reconsideration as an opportunity to fill the void and pump new material into the record. They submitted a collection of new exhibits to support a finding of numerosity. The collection includes a "Shipment Donation/Designation Form," Plaintiffs' interrogatory answers, and excerpts from policy manuals. *See* Pls.' Mtn. for Reconsideration, at 3–4 (Dckt. No. 172).

The new material doesn't get Plaintiffs very far. For starters, Plaintiffs do not explain why they failed to submit any of this material the first time around. Plaintiffs never suggest that any of this material is new, or that they didn't have it when they filed their class certification briefs.

In fact, the opposite is true. Plaintiffs had all of the documents in hand before the parties completed the briefing on the motion for class certification. Plaintiffs moved for class certification on June 16, 2021. *See* Pls.' Mtn. for Class Certification (Dckt. No. 146). Defendants produced the manuals from 2019 to 2021, before the close of the briefing. *See* Certificates of Service (Dckt. No. 171-2). True, Defendants produced the form, and served the interrogatory responses, after the original motion for class certification. *Id.*; *see also* Certificate of Service for Answers to Fourth Set of Interrogatories (Dckt. No. 174-1). But Plaintiffs had them in hand before filing the reply brief. *See* Defs.' Resp. to Pls.' Mtn. for Reconsideration, at 2 (Dckt. No. 174); *see also* Ornelas Dep. (Dckt. No. 153-2); Certificate of Service for Answers to Fourth Set of Interrogatories. A reply brief was the perfect time to respond to anything new.

A party can seek reconsideration based on newly discovered evidence. *See Patrick*, 103 F. Supp. 3d at 911–12; *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269; *Bank of Waunakee*, 906 F.2d at 1191. But the key phrase is *newly discovered*. A motion for reconsideration is not the time or the place to present evidence that a party neglected to present the first time around. *See Belbis*, 2003 WL 187407, at *1 ("A motion for reconsideration cannot be used to . . . present evidence that could have been adduced during the pendency of the original motion.").

Instead of offering an explanation for the belated submission, Plaintiffs attempt to shift the blame. Of all things, Plaintiffs attempt to lay the blame for the belated submission at the Defendants' feet. "Had defendants contested the numerosity of the 'government-issued identification' subclass or had plaintiffs received notice that the Court was conducting its own investigation into numerosity, plaintiffs would have submitted the evidence described below." *See* Pls.' Mtn. for Reconsideration, at ¶ 6 (Dckt. No. 172).

13

Wherever the blame lies for the late submission, the doorstep of the Defendants isn't it. The simple reality is that Defendants opposed class certification on numerosity grounds. Plaintiffs knew that numerosity was in play. And for whatever reason, they decided not to present the evidence that they now deem important.

That ship has sailed. Plaintiffs filed this case in 2017, and received a number of extensions of discovery. *See, e.g.*, 6/10/19 Order (Dckt. No. 70); 9/5/19 Order (Dckt. No. 76); 3/2/20 Order (Dckt. No. 105); 10/30/20 Order (Dckt. No. 128); 4/19/21 Order (Dckt. No. 139); 4/26/21 Order (Dckt. No. 142). Putting things in perspective, Plaintiffs originally filed for class certification in 2019, and the Court later denied that motion to give the parties more time to gather discovery. *See* Pls.' Mtn. (Dckt. No. 92); 11/16/20 Order (Dckt. No. 129). Plaintiffs had an abundance of time to gather any facts necessary to satisfy the requirements of Rule 23.

Even if Plaintiffs had offered the new exhibits in a timely manner, the new material was less than compelling. The gist of the new material is that Defendants had a policy of not sending the detainees' property to the IDOC. Plaintiffs take it as a given that, if the property didn't go to the IDOC, then the property remained at the Cook County Jail.

But there were other options, too. In fact, Plaintiffs' own exhibit proves the point. The Sheriff's Office used a form that asked detainees if they wanted to donate their property, or have someone pick up their property. "You are being shipped to the Illinois Department of Corrections or to another facility and cannot take any of the items above with you. You have two choices. **You can donate the items or designate someone to pick them up.**" *See* Cook County Sheriff's Office, Shipment Donation/Designator Form (Dckt. No. 172-1) (emphasis in original).

Plaintiffs cannot establish numerosity simply based on the assumption that lots of people entered Cook County Jail with government IDs, and based on a policy that gave detainees options. Before the detainees went to the IDOC, the Jail asked the detainees if they still wanted their personal property. If so, the Jail gave detainees the opportunity to have someone pick it up.

Detainees who abandoned their property, or who had friends or relatives pick it up, are not in the proposed class. The putative class covers detainees who entered the Jail with IDs, but "whose government issued identification remained in the custody of the Sheriff of Cook County." *See* Pls.' Reply, at 8 (Dckt. No. 155).

There is nothing in the record about how often detainees completed the form and asked for friends or relatives to retrieve their property. And there is nothing in the record about how often detainees abandoned their personal property altogether. Maybe it happened often, or maybe not. It is anyone's guess.

Making assumptions has its place, but at some point, indulging assumptions comes to an end. Plaintiffs ask this Court to stack assumption upon assumption. The assumptions include how many detainees entered the Jail, and went to the IDOC, without their IDs, and without having someone else pick them up. A plaintiff who wants class certification must offer more than a tower of assumptions.

Class certification cannot rest on speculation, guesswork, or conclusory assurances that a putative class satisfies Rule 23. Here, Plaintiffs gave this Court little else to go on, despite plenty of time to gather the evidence. The Federal Rules demand a rigorous analysis, but Plaintiffs' motion for class certification lacked rigor.

## Conclusion

Plaintiffs' motion for reconsideration is denied.

15

Date:  August 16, 2022

_____

Steven C. Seeger
United States District Judge

16